**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

Raymond Fagan,                             :

                                         :       Civil Action No: 22-cv-10065

                                         :

                       Plaintiff,         :       **COMPLAINT**

                                         :

      -   against  -               :

                                         :

William H. Sadlier, Inc.             :

                                         :

                       Defendant.      :

------------------------------------------------------------X

Plaintiff Raymond Fagan ("Mr. Fagan" or "Plaintiff"), by his attorneys, Aguilar Bentley LLC, as his complaint against William H. Sadlier, Inc. ("Sadlier" or the "Company" or "Defendant"), alleges as follows:

<u>**Nature of the Action**</u>

1.      This action is brought by the former President and Chief Executive Officer ("CEO") of Defendant corporation for breach of the separation agreement that the parties had entered into on August 23, 2022 (the "2022 Separation Agreement," attached hereto as **Exhibit A**).  Pursuant to that agreement, Sadlier was to provide 12 months of severance pay and benefits to Mr. Fagan commencing upon his September 6, 2022 departure from the Company, with payments to be made biweekly.  However, on October 25, 2022, Sadlier announced that it was "immediately suspending" Mr. Fagan's separation payments, disingenuously stating that it uncovered "malfeasance" that would have justified a "for Cause" termination of Mr. Fagan's employment.  Following this notification, the Company failed to make the next biweekly payment required by the 2022 Separation Agreement, which was due on November 4, 2022.

1

2.      Putting aside the plainly pretextual nature of the so-called "malfeasance" –
amounting to two instances, one of which suggested that an income tax return from several years
ago *might* not have been filed, and the other of which involved no wrongdoing – the Company
has no contractual basis to retroactively terminate its former CEO nearly two months after his
departure.  Indeed, the provision in the earlier 2017 agreement upon which the Company
apparently claims its entitlement to now effectuate a "for Cause" termination was superseded by
the 2022 Separation Agreement.

3.      Mr. Fagan is entitled to full payment of his severance and benefits that the
Company agreed to provide him in the 2022 Separation Agreement, as well as attorney's fees
and costs pursuant to the prevailing party attorney's fees provision in that same agreement, as
well as pre- and post-judgment interest, and such other relief as this Court deems just.

### The Parties

4.      Mr. Fagan is an individual resident of Connecticut.

5.      Sadlier is a corporation organized and existing under the laws of the State of New
York and maintains a principal place of business at 25 Broadway, New York, New York, 10004.

### Jurisdiction and Venue

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in
controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between
citizens of different States.

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 (a) because
Defendant's principal place of business is within this district.  Moreover, pursuant to the 2022
Separation Agreement, the parties agreed that this Court would serve as the exclusive jurisdiction

for adjudication of disputes for any claim arising under or relating to the 2022 Separation

Agreement.  (Ex. A, § 13.)

## Factual Background

### *Mr. Fagan is Named CEO of Sadlier and Enters Into the 2017 Severance Agreement.*

8.      Plaintiff Ray Fagan is a long-time business professional, having held executive

leadership positions at Thomson Corporation, Harcourt Education Group, and Dun & Bradstreet,

among others.

9.      In November 2012, Mr. Fagan joined Sadlier as its Chief Financial Officer, a

position that he held for nearly five years.

10.      Sadlier is a publisher of academic and catechetical materials for students in

Grades K-12, primarily in the United States. Sadlier's ownership is majority controlled by one

family, of which four family branches hold significant ownership positions.

11.      In June 2017, Mr. Fagan was promoted by the Sadlier Board to be the CEO of the

Company.

12.      Shortly after his appointment as CEO, Mr. Fagan entered into a Severance Pay

Agreement with the Company dated October 3, 2017 (the "2017 Severance Agreement,"

attached hereto as **Exhibit B**), in order to provide for the payment of severance to Mr. Fagan in

the event that his employment relationship with the Company was terminated.

13.      The 2017 Severance Agreement provided that if Mr. Fagan was terminated by the

company without "Cause," or if he departed the Company for "Good Reason," he would be

entitled to, among other things, 24 months' severance if his termination was prior to June 30,

2020, and 12 months' severance if his termination was on or after June 30, 2020.  (Ex. B § 1(a).)

14.     The 2017 Severance Agreement further provided that if Mr. Fagan was terminated "for 'Cause,'" that he would not be entitled to severance payments.  (*Id.* at § 1(c).)

15.     "Cause" is defined in Section 1(c) of the 2017 Severance Agreement as a determination by the Board "that the Executive has:

(1)     failed, after written notice specifying such failure and a reasonable opportunity during a period of no fewer than fifteen (15) days to cure such failure, to perform the Executive's duties responsibly (other than a failure resulting from the Executive's temporary illness or injury) or to adhere to the lawful directions of the Board of Directors or the Chairman of the Company that are reasonably consistent with the Executive's duties and position.  A termination for poor performance alone shall not be considered Cause;

(2)     engaged in any act of dishonesty (including any material misrepresentation or false statement made to the Company in connection with the Executive's employment), unlawful harassment or discrimination, fraud, gross negligence or willful misconduct in connection with his employment, or has embezzled or misappropriated Company property;

(3)     committed any acts of malfeasance, misconduct, recklessness or intentional wrongdoing, whether by omission or commission, which materially and adversely affect the business or affairs of the Company (or any parent or subsidiary);

(4)     been inebriated while on Company premises or performing his duties for the Company or, used or possessed illegal drugs, or is found to have chronic or persistent substance abuse that affects the performance of the Executive's duties under this Agreement;

(5)     committed any act constituting (A) a felony or (B) a misdemeanor

involving an act or moral turpitude; or

(6)     materially breached this [2017 Severance] Agreement and such breach, if

subject to cure, remains uncured for a period of fifteen (15) days following the

Executive's receipt of written notice describing the breach in reasonable detail."

(Ex. B § 1(c)(1)-(6).)

16.     Among the other provisions in the 2017 Severance Agreement is Section 8,

entitled Consent to Jurisdiction and Waiver of Jury, which sets this Court as the mandatory

forum for adjudication of claims "arising under or relating to" the 2017 Severance Agreement,

and waives personal service obligations and trial by jury.  (Ex. B. § 8.)

17.     Also among the provisions in the 2017 Severance Agreement is Section 9, entitled

Prevailing Party, which provides in part that

> [i]f any Party initiates any legal action or lawsuit against another party hereto to
> enforce its rights under this Agreement, the prevailing party in such action or suit
> shall be entitled to receive reimbursement from the other party for all reasonable
> attorney's fees and other costs and expenses incurred by the prevailing party in
> respect of that litigation, including any appeal, and such reimbursement may be
> included in the judgment or final order issued in such proceeding.  Any award of
> damages following judicial remedy as a result of the breach of this Agreement or
> any [of] its provisions shall include an award of prejudgment interest from the date
> of the breach at the maximum rate of interest allowed by law.

(Ex. B § 9.)

### *__Mr. Fagan and the Company Enter into the 2022 Separation Agreement, Which Supersedes All But Certain Enumerated Sections of the 2017 Severance Agreement.__*

18.     The family holding the controlling interest in Sadlier experienced a growing

fracture with the COVID-19 pandemic, during which time the Company suffered economic

difficulties, necessitating among other important actions, suspension of dividends, a decision that

Mr. Fagan, the Company's CFO and the Board supported, but several family members opposed.

Following this, certain family member shareholders orchestrated the ouster of the Company's remaining independent Board members in a special shareholder meeting, leaving the Board nearly fully controlled by the family.

19.     In August 2022, Mr. Fagan was advised by the Chairman of the Board that he did not have sufficient Board support to continue in his position as CEO and neither, he later learned, did the Company's CFO.

20.     Given the Company's obligations to Mr. Fagan pursuant to the 2017 Severance Agreement, the parties entered into the 2022 Separation Agreement "to provide the Severance Pay, as defined under the [2017] Severance Agreement, to [Mr. Fagan] in exchange for a general release by [Mr. Fagan] and [] agreement to other terms…"  (Ex. A, page 1.)

21.     The 2022 Separation Agreement provides that "the Parties have decided to sever their employment relationship," and that Mr. Fagan's "last day of employment with the Company shall be September 6, 2022."  (*Id.* at § 1.)  This date corresponded with the first date of employment for Mr. Fagan's successor, an individual brought in by the Company's Board of Directors from outside the Company.

22.     Section 3 of the 2022 Separation Agreement lays out the various components of Mr. Fagan's severance pay, with Section 3(a) providing that Mr. Fagan was to be paid an amount equal to his base salary for a 12-month period, with such payments "made in regular payroll installments, less applicable withholdings, and shall begin to be paid on the first payroll date after the Release Effective Date" on or about August 31, 2022.  (*Id.* at § 3(a).)

23.     Section 3(b) of the 2022 Separation Agreement provided for reimbursement for a portion of the premium for six months of COBRA health continuation coverage.

24.      Section 3(c) of the 2022 Separation Agreement provided for a lump sum payment of $70,000 within ten days of the Release Effective Date.

25.      Section 3(e) of the 2022 Separation Agreement provided for up to $5,000 in reimbursement for Mr. Fagan's legal fees.

26.      Pursuant to Section 4 of the 2022 Separation Agreement, Mr. Fagan agreed that "the amounts described in Section 3 are the full consideration for [the 2022 Separation Agreement] and are equal to or exceed the severance benefits described in Paragraph 1(a) of the [2017] Severance Agreement and are equal to or exceed any benefits, compensation, or other financial consideration to which Employee would be entitled absent his signing of this Agreement."  (Ex. A § 4.)

27.      Pursuant to Section 6 of the 2022 Separation Agreement, and in consideration for the severance payments in Section 3, Mr. Fagan agreed to release the Company from any and all claims up to the date of his separation from the Company.  (Ex. A § 6.)

28.      Critically, Section 15 of the 2022 Separation Agreement provides as follows:

> ***This Agreement constitutes the complete understanding between the Parties with respect to the termination of Employee's employment at the Company and supersedes any and all agreements***, understandings, and discussions, whether written or oral, between the Parties, ***except as otherwise expressly provided herein with respect to the [2017] Severance Agreement***, which such provisions shall remain in full effect.  No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by each of the Parties.

(Ex. A, § 15 (emphasis added).)

29.      The only provisions of the 2017 Severance Agreement that are expressly provided for in the 2022 Separation Agreement as surviving, and *not* being superseded by the 2022 Separation Agreement, are Sections 2 (Prohibited Activity), 3 (Non-Solicitation), 4 (Non-

Disclosure and Confidentiality), 7 (Remedies), 8 (Consent to Jurisdiction and Waiver of Jury), and 9 (Prevailing Party).

### *Mr. Fagan Departs the Company as of September 6, 2022.*

30.     On September 6, 2022, Mr. Fagan submitted a letter of resignation to the Board, resigning from his position as CEO, and also resigning from his position on the Board.  The CFO of the Company resigned on the same day.

31.     Pursuant to the 2022 Separation Agreement, Mr. Fagan's last day of employment with the Company was September 6, 2022, after which he ceased to be a Sadlier employee.

32.     On September 9, 2022, Mr. Fagan received a payment from the Company, which he understood to be partly compensation for his final weeks of employment and partly the first payment of the Severance Period, as defined in the 2022 Separation Agreement.

33.     Mr. Fagan received severance payments pursuant to Section 3(a) of the 2022 Separation Agreement on September 21, October 7, and October 21, 2022, receiving total severance payments of $50,146.

34.     Mr. Fagan also received a lump-sum payment of $70,000 on September 9, 2022, in accordance with Section 3(c) of the 2022 Separation Agreement.

35.     Mr. Fagan was also reimbursed for his legal fees which totaled $4,500.

### *The Company Attempts to Retroactively Terminate Mr. Fagan for "Cause" Seven Weeks After His Departure, Pursuant to a Superseded Provision of the 2017 Severance Agreement.*

36.     On October 25, 2022, Mr. Fagan's counsel received a letter from an outside law firm, purportedly writing on behalf of the Company, claiming that it had "come to the Company's attention" that during Mr. Fagan's tenure as CEO he had engaged in two "acts of malfeasance," such that there existed grounds to terminate Mr. Fagan "for 'Cause,' as defined in his [2017] Severance Agreement" at Section 1(c).

37.     The first "act of malfeasance" referenced the Company's alleged failure to timely file an amendment to its 2015 Federal Income tax return.  However, filing tax returns was not a duty of Mr. Fagan as Company CEO; rather, this was the responsibility of the Company's Controller.

38.     The second "act of malfeasance" had to do with Mr. Fagan's alleged failure to seek Board approval for an amendment to an agreement with a key supplier.  However, negotiating amendments to agreements was a task that Mr. Fagan regularly undertook or delegated to his direct reports in his role at CEO, and Board approval for such amendments was neither required nor even requested in the five years of Mr. Fagan's term.

39.     The October 25, 2022 letter went on to state that "pending the final outcome of the above matters, the Company is immediately suspending the payments and continuation of benefits provided in Section 3 of the [2022] Separation Agreement, to which Mr. Fagan would have no entitlement under the Severance Agreement upon a termination of his employment for Cause."

40.     Neither the 2022 Separation Agreement nor the 2017 Severance Agreement contain any provision permitting the "suspension" of severance payments.

41.     Additionally, neither the 2022 Separation Agreement nor the 2017 Severance Agreement contain any provision permitting a "retroactive termination" of Plaintiff after he had resigned and no longer worked for the Company, including, but not limited to, a "retroactive termination for Cause."

42.     Moreover, the "for 'Cause'" provision in Section 1(c) of the 2017 Severance Agreement – upon which the Company apparently bases its authority to cease providing

severance to Mr. Fagan – has been superseded by the 2022 Separation Agreement, as set forth in Section 15 of that agreement.

43.     Understanding the Company's October 25 communication for the pretextual attempt to evade its contractual responsibilities that it was, counsel to Mr. Fagan reached out to Company counsel to advise that its failure to pay Mr. Fagan's next severance payment installment – due November 4, 2022 – would amount to an actionable breach of the 2022 Separation Agreement.

44.     Neither the Company nor its counsel responded to this communication, and the Company failed to make Mr. Fagan's severance payment on November 4, 2022 and also failed to make the payment due November 18, 2022

## First Claim for Relief
### (Breach of Contract – 2022 Separation Agreement)

45.     Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

46.     The parties entered into the 2022 Separation Agreement, which is a valid and enforceable contract, pursuant to which the Company was to provide Mr. Fagan with certain severance payments and benefits over a 12-month period.

47.     Plaintiff performed his obligations pursuant to the 2022 Separation Agreement.

48.     Plaintiff demanded that Defendant make the necessary payments that were due and owing to Mr. Fagan.

49.     To date, Defendant has failed to make adequate and timely payment and thus has materially breached the 2022 Separation Agreement.

50.     As a direct and proximate cause of these breaches, Plaintiff has been damaged in an amount of no less than $384,000 plus the value of certain benefits.

**Second Claim for Relief**
**(Breach of Covenant of Good Faith and Fair Dealing)**

51.     Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

52.     Mr. Fagan's 2022 Separation Agreement with the Company included an implicit covenant of good faith and fair dealing that prohibited the Company from doing anything that would have the effect of destroying Mr. Fagan's right to receive the benefits of the 2022 Separation Agreement.

53.     Pursuant to the 2022 Separation Agreement, Mr. Fagan was entitled to 12 months' severance payments and numerous additional benefits.

54.     After knowing of, approving of and benefiting from the 2022 Separation Agreement, the Company attempted to wrongfully and illegally terminate Mr. Fagan's employment for cause after he had already resigned in a pretextual effort to avoid its severance obligations pursuant to the 2022 Separation Agreement.

55.     The Company's breach of its implied covenant of good faith and fair dealing has injured Mr. Fagan by depriving him of his severance payments.

56.     As a direct and proximate cause of this breach, Plaintiff has been damaged in an amount of no less than $384,000 plus the value of certain benefits.

**Third Claim for Relief**
**(Promissory Estoppel – In the Alternative to Count I)**

57.     Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

11

58.     Defendant promised to pay Plaintiff not less than $504,600, plus the value of certain benefits.

59.     Plaintiff reasonably and foreseeably relied on Defendant's promises and representations.

60.     Plaintiff suffered damages as a result, and Defendant is estopped from denying its liability to Plaintiff.

**Fourth Claim for Relief**
**(Declaratory Judgment)**

61.     Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

62.     An actual controversy has arisen and now exists between Mr. Fagan and the Company concerning Mr. Fagan's right to the payments and benefits guaranteed pursuant to the 2022 Separation Agreement.

63.     Mr. Fagan respectfully requests a judicial declaration that Sadlier has a duty to provide Mr. Fagan with all of the payments and benefits guaranteed by the 2022 Separation Agreement.

**Prayer for Relief**

**WHEREFORE,** Plaintiff demands judgment in his favor against Defendant on all of the foregoing causes of action and seeks the following:

a.     Compensatory damages in an amount not less than $384,600, plus the value of certain benefits;

b.    A declaration that Sadlier has a duty to provide Mr. Fagan with all payments and

benefits guaranteed by the 2022 Separation Agreement.

c.    Attorney's fees and costs, as set forth in Section 9 of the 2017 Severance

Agreement, which is incorporated by reference into the 2022 Separation Agreement

at Section 13;

d.    Prejudgment interest from the date of the breach at the maximum rate of interest

allowed by law, as set forth in Section 9 of the 2017 Severance Agreement, which is

incorporated by reference into the 2022 Separation Agreement at Section 13; and

e.    Such other relief as the Court deems just and equitable.


Dated:  New York, New York
        November 28, 2022


                                    Respectfully Submitted,

                                    AGUILAR BENTLEY LLC


                                       ___/s/ Lisa Bentley_____
                                       Lisa Bentley (LB-1565)

                                       5 Penn Plaza, 19th Floor
                                       New York, New York 10001
                                       Telephone: 212-835-1521
                                       Facsimile: 646-924-0599
                                       lbentley@aguilarbentley.com


13